UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY NO. EH7713140,<br><br>Plaintiff,<br><br>v.<br><br>WORLDONE PRESENTS, LLC; JIM HANZALIK; & SIMON PANTOJA,<br><br>Defendants. | No. 2:18-cv-02432-TLN-EFB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Plaintiff Certain Underwriters at Lloyd's of London Subscribing to Policy No. EH7713140's ("Plaintiff" or "Underwriters") Motion for Summary Judgment. (ECF No. 11.) Defendants did not file an opposition. For the reasons set forth below, Plaintiff's Motion for Summary Judgment (ECF No. 11) is GRANTED.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

*A. The Policy*

Underwriters issued Special Events Policy No. EH771314, under which Certificate No. 1842491 was issued to WorldOne Presents, LLC ("WorldOne") and Jim Hanzalik ("Hanzalik") (together, the "Insureds") for the Insured Event Period of June 11, 2016, to June 12, 2016 in

connection with the concert at Thunder Valley Casino Resort on June 11, 2016 (the "Policy"). (ECF No. 11-2 ¶ 1.) The "Insured Event" is described in the Policy as Concerts – 50's, 60's, 70's, or 80's Music and Summer Jam Festival. (ECF No. 11-2 ¶ 2.)

Under Insuring Agreement I.A.1. and subject to the Policy's other terms and conditions, the Policy provides specified coverage for Damages and Claims Expenses resulting from a Claim for Bodily Injury caused by an Accident occurring in the course of or at an Insured Event. (ECF No. 11-2 ¶ 5.) "Claim" is defined to mean "a written notice received by an Insured of an intention to hold the Insured responsible for compensation for Damages, including the service of a suit or institution of arbitration proceedings against the Insured." (ECF No. 11-2 ¶ 6.)

Section V.(1)(ff) of the Policy excludes coverage for any Claim or liability arising out of or resulting from:

a) "Assault," "Battery" or "Assault and Battery" committed by any person;
b) The failure to suppress or prevent "Assault," "Battery" or "Assault and Battery";
c) The failure to provide an environment safe from "Assault," "Battery" or "Assault and Battery";
d) The failure to warn of the dangers of the environment which could contribute to "Assault," "Battery" or "Assault and Battery";
e) "Assault," "Battery" or "Assault and Battery" arising out of the negligent hiring, supervision, or training of any person;
f) The use of force to protect persons or property whether or not the Bodily Injury or Property Damage or Personal Injury and Advertising Injury was intended from the standpoint of the Insured or committed by or at the direction of the Insured.

(ECF No. 11-2 ¶ 7 ("Assault and Battery Exclusion").)

The Policy defines "Assault" as "[a]n act creating an apprehension in another of immediate harmful or offensive contact, or [a]n attempt to commit a "Battery." (ECF No. 11-2, ¶ 8.) "Battery" is defined as "an act which brings about harmful or offensive contact to another or anything connected to another." (ECF No. 11-2 ¶ 9.) "Assault and Battery" means "the combination of an 'Assault' and a 'Battery.'" (ECF No. 11-2 ¶ 10.)

B. *The Pantoja Action*

On September 12, 2016, Simon Pantoja ("Pantoja") filed a complaint against WorldOne, Hanzalik, and others in the Superior Court for Placer County, California. (ECF No. 11-2 ¶ 11.) Pantoja filed a first amended complaint ("FAC") on May 31, 2017, which was the operative

complaint in the Pantoja action when the parties entered into a stipulated judgment, relevant here.  (ECF No. 11-2 ¶ 12.)  The FAC alleges that Pantoja was injured on June 11, 2016, while attending V101's Summer Jam concert at Thunder Valley Casino Resort.  (ECF No. 11-2 ¶ 13.)

Pantoja asserts that Insureds were the promoters of the concert.  (ECF No. 11-2 ¶ 14.)  He alleges that, as promoters, Insureds were responsible for "providing security measures to prevent and stop fights and guests from entering the concert with dangerous weapons."  (ECF No. 11-2 ¶ 15.)  The FAC asserts that Insureds were "responsible for the hiring, supervision, and training of security personal (sic) for the concert."  (ECF No. 11-2 ¶ 16.)  Pantoja alleges that:

> During the concert a fight broke out between unknown individuals for which security personal (sic) working for defendant WorldOne Presents, LLC, Hanzalik, and/or the tribe [Thunder Valley], failed to respond.  As a result of defendants' security personal failing to respond to individuals continuing to assault a victim, plaintiff attempted to stop the physical assault of a fellow guest and was stabbed multiple times by one of the perpetrators who had entered the concert with the deadly weapon.

(ECF No. 11-2 ¶ 17.)

Based on these and other allegations, the FAC asserts causes of action for negligence and premises liability.  (ECF No. 11-2 ¶ 18.)  Pantoja sought compensatory damages, pre-judgment interest, punitive damages, and costs.  (ECF No. 11-2 ¶ 19.)

*C. Tender of the Pantoja Action to Underwriters*

On August 13, 2018 – nearly two years after the Pantoja action was filed – counsel for Insureds first advised Underwriters of the suit, tendering the Claim for coverage under the Policy.  (ECF No. 11-2 ¶ 20.)  On August 22, 2018, counsel for Insureds provided Underwriters with a copy of the operative complaint in the Pantoja action – that is, the FAC.  (ECF No. 11-2 ¶ 21.)

On September 4, 2018, Underwriters sent a coverage letter to Insureds concerning the availability of coverage for the Pantoja action.  (ECF No. 11-2 ¶ 22.)  In that letter, Underwriters informed Insureds that no coverage was available under the Policy for the Pantoja action because the Assault and Battery Exclusion precludes coverage.  (ECF No. 11-2 ¶ 23.)  Thereafter, Insureds entered into a stipulated judgment and assignment of rights in the Pantoja action, in

which Pantoja dismissed Hanzalik from the Pantoja action with prejudice, WorldOne consented to entry of a $1 million stipulated judgment, and Insureds assigned all rights under the Policy to Pantoja. (ECF No. 11-2 ¶ 24.)

D. *The Present Action*

On September 4, 2018, Underwriters filed the present complaint seeking declaratory judgment against Defendants. (ECF No. 1.) More specifically, Plaintiff seeks to obtain a judicial declaration with respect to the rights and obligations of the parties under the Policy. (ECF No. 1 ¶ 2).

On October 1, 2018, Plaintiff filed the instant Motion for Summary Judgment. (ECF No. 11.) Defendants have not opposed the motion. On November 6, 2018, Plaintiff filed a request for entry of default pursuant to Federal Rule of Civil Procedure 55(a) on the ground that Defendants failed to file responsive pleadings. (ECF No. 13 at 2.) The Clerk entered default on November 7, 2018. Rather than seeking default judgment, Underwriters clarified to the Court that it believed it would be more efficient for the Court to rule on the merits of Underwriters' already pending motion for summary judgment. (*See* ECF No. 18.) The Court agrees, and that order follows.

**II. STANDARD OF LAW**

A. *Summary Judgment*

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine

dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87; *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

When a summary judgment is unopposed, a district court must "determine whether summary judgment is appropriate — that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Leramo v. Premier Anesthesia Med. Grp.*, No. CV F 09-2083 LJO JTL, 2011 WL 2680837, at *8 (E.C. Cal July 8, 2011), (*quoting Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir.1990)). A district court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *Id.* (quoting *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004)). A court "need not *sua sponte* review all the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.* (quoting *One Piece of Real Property*, 363 F.3d at 1101).

///

///

B. *Interpretation of Insurance Policies*

Under California law, "[i]nterpretation of an insurance policy is a question of law." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (quoting *Isaacson v. Cal. Ins. Guarantee Ass'n*, 44 Cal. 3d 775, 793 (1988)). It is governed by the mutual intent of the parties at the time the contract is formed, "inferred, if possible, solely from the written provisions of the contract." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993). Where policy language is "clear and explicit and does not involve an absurdity, the plain meaning governs." *GGIS Ins. Servs., Inc. v. Superior Court*, 168 Cal. App. 4th 1493, 1506 (2008). Absent a factual dispute as to the meaning of policy language, the interpretation, construction, and application of an insurance contract is strictly an issue of law. *See California Shoppers Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 35 (1985).

### III. ANALYSIS

Plaintiff seeks a declaration that the Policy does not provide coverage for Insureds or any person or entity claiming rights from or through the Insureds in connection with the Pantoja action, including defense and indemnity coverage, because such coverage is barred by the "Assault and Battery Exclusion" of the Policy. (ECF 11-1 at 2.) As the motion is unopposed, the Court must determine whether Plaintiff has demonstrated an entitlement to such declaratory judgment as a matter of law. *Leramo*, 2011 WL 2680827 at *6.

Under California law, an insurer has a duty to defend its insured against claims when the facts available to the insurer "give rise to the potential of liability under the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276–77 (1966). To be entitled to a defense, an insured must prove the existence of a potential for coverage; to refuse a defense, an insurer must establish the absence of any such potential. *See Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993) (en banc). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

Here, the complaint in the Pantoja action asserts causes of action for negligence and premises liability. (ECF No. 11-2 ¶ 18.) Pantoja alleges the Insureds failed to respond to a fight

that broke out during the concert (the Insured Event), and as a result of the Insureds' actions or inactions, Pantoja was stabbed multiple times. (ECF No. 11-2 ¶ 17.)

In evaluating the terms of the Policy, the Court looks specifically to the Assault and Battery Exclusion in Section V.(1)(ff). The Assault and Battery Exclusion precludes coverage for any Claim or liability arising out of or resulting from:

   a) "Assault," "Battery" or "Assault and Battery" committed by any person;
   b) The failure to suppress or prevent "Assault," "Battery" or "Assault and Battery";
   c) The failure to provide an environment safe from "Assault," "Battery" or "Assault and Battery."

(ECF No. 11-2 ¶ 7.) "Battery" is defined as "an act which brings about harmful or offensive contact to another or anything connected to another." (ECF No. 11-2 ¶ 9.) The Policy defines "Assault" as "[a]n act creating an apprehension in another of immediate harmful or offensive contact, or [a]n attempt to commit a "Battery." (ECF No. 11-2 ¶ 8.) "Assault and Battery" means "the combination of an 'Assault' and a 'Battery.'" (ECF No. 11-2 ¶ 10.)

Courts applying California law have broadly interpreted the Assault and Battery Exclusion's prefatory language. "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only *minimal causal connection* or incidental relationship." *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328 (1999) (emphasis added).

The Court finds the language of the Assault and Battery Exclusion, including the prefatory language, to be unambiguous as a matter of law. *See Krause v. Western Heritage Ins. Co.*, No. G041405, 2010 WL 2993991, at *14 (Cal. Ct. App. Aug. 2, 2010) ("In sum, broad assault or battery exclusions have been held to be unambiguous and given effect in California and other states."). Based on its unambiguous language, then, the Assault and Battery Exclusion bars coverage for any claim arising out of an Assault and/or Battery by any person. Pantoja alleges that, while at the concert, he was stabbed by an unknown assailant. (ECF No.

11-2 ¶ 17.) The Policy defines "Battery" as "an act which brings about harmful or offensive contact to another or anything connected to another." (ECF No. 11-2 ¶ 9.) Pantoja's alleged stabbing constitutes a "'Battery'. . . committed by any person," as contemplated by subpart (a) of the exclusion. Here, the two causes of action in Pantoja's FAC—negligence and premises liability—"arise out of" the Assault and/or Battery because they are causally connected and incidentally related to the stabbing of Pantoja.

Moreover, Pantoja's complaint alleges the Insureds failed to take necessary precautions to protect him from the Assault and Battery, including purportedly failing to take "security measures to prevent and stop fights and guests from entering the concert with dangerous weapons." (ECF No. 11-2 ¶ 15.) These allegations implicate subparts (b) and (c) of the Assault and Battery Exclusion, concerning the failure to prevent an Assault and/or Battery and the failure to provide an environment safe from Assault and/or Battery.

California law supports the Court's application of the Assault and Battery Exclusion here. For example, in *Yung Chen Wang v. Burlington Insurance Company*, No. 09-9285, 2010 WL 11597592, at *1 (C.D. Cal. Oct. 18, 2010), a hotel guest sued the hotel for negligence and premises liability, among other causes of action, because the guest alleged that he was stabbed by an unknown assailant. The insurer denied coverage based on an assault and battery exclusion, which applied to "bodily injury . . . arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." *Id.* The court held that the assault and battery exclusion applied because the hotel guest "was attacked by an unknown assailant, resulting in physical and emotional injuries. These injuries form the basis for all of [the guest's] causes of action." *Id.* at *5. Likewise, here, Pantoja alleges that he was stabbed by an unknown assailant and sued Insureds for negligence and premises liability. (ECF No. 11-2 ¶ 18.)

Numerous other courts have applied similar exclusionary language to bar coverage. *See Century Transit Systems, Inc. v. American Empire Surp. Ins. Co.*, 42 Cal. App. 4th 121, 127 (1996) ("We thus can come to no other conclusion than that a claim *based* on assault and battery is excluded."); *Zelda, Inc. v. Northland Ins. Co.* 56 Cal. App. 4th 1252, 1261 (1997) (holding

that "by its plain language, [an assault and battery exclusion] covers injury or damage arising when someone (not necessarily an insured) commits an act of assault or battery, or is in the course of committing an assault or battery"). Even where an insured's alleged negligence is the basis of its liability resulting from an assault and battery, courts have applied the exclusion to bar coverage on the basis that the claim arose from the assault. *See Mount Vernon Fire Ins. Corp. v. Oxnard Hospitality Enterprise, Inc.*, 219 Cal. App. 4th 876, 881-882 (2013) (barring coverage for negligence cause of action based on alleged assault). Thus, even though Pantoja asserts causes of action for negligence and premises liability, the Assault and Battery Exclusion applies because the causes of action "arise out of" the Assault and Battery—the stabbing—of Pantoja.

Since the Assault and Battery Exclusion applies to the Pantoja action, the Court finds that Plaintiff did not have a duty to defend Insureds. Moreover, "'[i]t is . . . well settled that because the duty to defend is broader than the duty to indemnify,' a determination that 'there is no duty to defend automatically means there is no duty to indemnify.'" *Certain Underwriters at Lloyd's of London v. Super. Court*, 24 Cal. 4th 945, 961 (2001) (quoting *New York v. Blank*, 745 F. Supp. 841, 844 (N.D.N.Y. 1990). Further, as assignee of Insureds' rights under the Policy, Pantoja has no greater rights under the Policy than Insureds. *See Beroukhim v. Lincoln Gen Ins. Co.*, No. 08-2896, 2008 WL 11336832, at *7 (C.D. Cal. June 9, 2008). Accordingly, the Policy does not provide coverage to Insureds or to Pantoja for the Pantoja action, including defense costs incurred or any settlement or judgment.

The Court therefore finds Underwriters has met its burden of showing its entitlement to summary judgment as a matter of law. Indeed, Defendants have raised no triable issue of disputed fact and, as a matter of law, the Assault and Battery Exclusion of the Special Events Policy No. EH-771314, Certificate No. 18429 (the "Policy") precludes coverage for the Pantoja action.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Underwriters' Motion for Summary Judgment (ECF No. 11). Underwriters is entitled to summary judgment because there are no disputed issues of material fact and as a matter of law, the Assault and Battery Exclusion of the

Special Events Policy No. EH-771314, Certificate No. 18429 (the "Policy") precludes coverage for the Pantoja action.

Accordingly, the Court DECLARES that

- the Assault and Battery Exclusion bars coverage under the Policy for the Pantoja action; and
- the Policy does not provide coverage to Insureds or Pantoja for defense costs incurred in or any settlement or judgment of the Pantoja action.

The Clerk is directed to enter judgment according to these declarations in favor of Plaintiff Underwriters and against all Defendants, and to close the case.

IT IS SO ORDERED.

Dated: September 27, 2019

Troy L. Nunley
United States District Judge